**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE GREEN PET SHOP ENTERPRISES, LLC,<br><br>       Plaintiff,<br><br> v.<br><br>COMFORT REVOLUTION,<br><br>       Defendant. | Civil Action No. 20-2130 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon Defendant Comfort Revolution's Motion for Attorneys' Fees under 35 U.S.C. § 285. (ECF Nos. 116, 117.) Plaintiff The Green Pet Shop Enterprises, LLC opposed, and Defendant replied. (ECF Nos. 118, 119.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

**I.  BACKGROUND[1]**

  The facts of this case have been recounted at length in the Court's previous opinion granting Defendant's motion for summary judgment. (ECF No. 113.) The Court therefore assumes the parties' familiarity with those facts and provides only a brief overview of the facts necessary for deciding this motion.

---

[1]  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

The case centers around U.S. Patent No. 8,720,218 (the '218 Patent), which claims a pressure activated recharging cooling platform, with the purpose of creating a cooling pad for pets that does not require refrigeration. (ECF No. 1 ¶¶ 7-8; ECF No. 1-2 at 2.) Defendant's allegedly infringing product (the Accused Product) is a "Therapedic Cooling Gel & Memory Foam Pillow." (ECF No. 1 ¶ 10.)

On April 14, 2010, Plaintiff filed the '218 Patent with the United States Patent and Trademark Office (PTO). (ECF No. 100-1 ¶ 1; ECF No. 104-1 ¶ 1.) It was issued by the PTO on May 13, 2014. (*See* ECF No. 100-3 at 2.) The '218 Patent listed Gerard Prendergast as the sole inventor and Plaintiff as assignee. (*Id.*)

From at least 2015 to 2017, Plaintiff brought '218-based patent infringement actions against different defendants across several federal jurisdictions. (*See* ECF No. 117 at 12 (listing cases).) Before filing suit in the instant matter, counsel for Plaintiff "purchased a sample of" the Accused Product, "visually examined the [A]ccused [P]roduct samples and examined them by touch, then compared them to the claims" of Plaintiff's patent. (ECF No. 118-10 at 4.) The Accused Product was not marketed as pressure activated. (ECF No. 100-1 ¶ 5; ECF No. 104-1 ¶ 5.) But counsel for Plaintiff tested "whether the sample had a pressure-activated recharging cooling composition" by "press[ing] on the sample with [his] hand," and, after observing that his "hand felt cooler with the pressure," he inferred that the cooling composition was pressure-activated. (ECF No. 118-10 at 4-5.) On January 9, 2020, Plaintiff brought this patent infringement action in the Western District of North Carolina. (ECF No. 1.) In February 2020, the case was transferred to this Court. (ECF Nos. 9, 10.)

Prendergast sat for a deposition in October 2020. Prendergast testified that he enlisted a factory in China to provide him with a "composition for use in his cooling pad that did not require

2

freezing." (ECF No. 100-1 ¶¶ 7, 12; ECF No. 104-1 ¶ 7.) The factory then created the product and sent "it and its chemical formula" to Prendergast. (ECF No. 100-1 ¶ 8; ECF No. 104-1 ¶ 8.) The factory "came up with the formula" for the cooling pad, but the "concept of using it . . . for pets" was Prendergast's. (ECF. No. 100-8 at 30:3-4.) In other words, Prendergast had "the germ, the seed of the idea of the cool pet pad." (*Id.* at 30:1-2.) He also "tweak[ed]" and "test[ed]" the cooling composition provided by the Chinese factory, and it was through this process that he discovered the pads cooled following the application of pressure. (*Id.* at 12:25-14:3, 14:19-22.) Plaintiff did not disclose the factory's role in developing the product to the PTO. (ECF No. 100-1 ¶ 12; ECF No. 104-1 ¶ 12.)

The case proceeded, with the parties—including Defendant—taking no action in response to Prendergast's deposition. On November 19, 2021, following a hearing, the Court issued an opinion pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996), to clarify the construction of the Claims. The parties proceeded with discovery. On January 8, 2024, Plaintiff's expert, Nathanial Lynd, sat for a deposition. (ECF No. 100-5.) Dr. Lynd stated that, to test whether the Accused Product's "cooling effect was caused by the pressure activation," he used warmed ground beef to run a comparison: In one model he held the ground beef and applied pressure to the Accused Product and in another he attempted to put the ground beef "as close as" possible to "the [A]ccused [P]roduct without" applying pressure to determine whether pressure or proximity caused the cooling. (*See id.* at 9, 18-19.) Although there was "no peer review journal that would publish" this type of work because there are "no peer reviewed academic articles on pressure activated cooling compositions," Dr. Lynd testified that he follows "the scientific method" and that the methodology he employed was "acceptable." (*Id.* at 9, 12, 19.)

3

On August 2, 2024, Defendant moved for summary judgment, arguing that Claims 15 and 16 of the Patent were invalid and not infringed by the Accused Product. (ECF No. 100.) Among other theories, Defendant—for the first time and almost four years after Prendergast's deposition—asserted that the '218 Patent was invalid because Prendergast was not the sole inventor of the claimed invention. (ECF No. 100-2 at 37-39.)

At the same time the parties litigated this case, they also litigated a similar matter in the District of Delaware (the Delaware Litigation). In that case, Plaintiff asserted two related patents—U.S. Patent Nos. 11,375,685 and 11,716,965—against Defendant. (ECF No. 116-5 ¶¶ 1-3, 7-8.)[2] On September 12, 2024—shortly after the completion of summary judgment briefing in this New Jersey litigation—the Delaware court held a hearing on Defendant's motion to amend an answer and counterclaims. (ECF No. 116-2.) In that hearing, Defendant sought to add a counterclaim against Plaintiff for inequitable conduct, alleging, among other things, that Plaintiff failed to disclose the 2020 Prendergast deposition (taken as part of the litigation before this Court) to the PTO. (*Id.* at 9; ECF No. 116-8 ¶¶ 61, 79-85, 112.) The patents in the Delaware Litigation were filed with the PTO in 2021 and 2022—after the 2020 Prendergast deposition but well before the Defendant in the New Jersey litigation raised the inventorship issue in 2024. (ECF No. 116-5 ¶¶ 7-8.)

The Delaware court allowed the claim to be added, finding Defendant's "allegations plausibly state a claim for inequitable conduct" and were "one of the best pled inequitable conduct claims [the Court had] seen." (ECF No. 116-2 at 12.) The Delaware court stated that Defendant's

---

[2]   That case is *The Green Pet Shop Enters., LLC v. Comfort Rev., LLC*, Civ. No. 23-00230 (D. Del. filed Mar. 2, 2023).

pleading "talks about the potential inventorship problem as well as an on-sale bar which seems . . . to be even clearer than the inventorship issue." (*Id.* at 13.)

Meanwhile, this Court evaluated the summary judgment briefing. On March 17, 2025, relying on Prendergast's deposition, the Court granted summary judgment for Defendant. (ECF No. 113 at 17.) In short, a "key" component of Claims 15 and 16 was that the pads cooled through pressure activation. (ECF No. 100-5 at 3, 5.) Yet, it was the Chinese factory—without Prendergast's direction—that made the pad cool through such application of pressure. Indeed, Prendergast did not even inform the factory that he wanted such a feature. (ECF No. 100-8 at 14-15.) Thus, the Court found that because Prendergast did not conceive of this essential feature, he was not the sole inventor, and the '218 Patent was invalid. (ECF No. 113 at 17.)

Now, having secured summary judgment in its favor, Defendant—pointing to Plaintiff's conduct in this and other litigation—seeks attorneys' fees under 35 U.S.C. § 285 as well as expert fees pursuant to this Court's inherent sanctioning power. (ECF No. 117 at 6, 14.)

## II. LEGAL STANDARD

Under 35 U.S.C. § 285, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party" in a patent case. To trigger fee-shifting under the statute, the moving party must establish that: "(1) they are the prevailing party; (2) the case is exceptional; and (3) the [requested] fees are reasonable." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, Civ. No. 05-897, 2018 WL 2378406, at *2 (D.N.J. May 23, 2018) (citing *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 471 (Fed. Cir. 1985)). "There is 'no precise rule or formula for making' a determination as to whether a case is exceptional." *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 57 (D.N.J. 2021) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the

governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness,* 572 U.S. at 554. Whether a case is exceptional is to be determined by courts "in a case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

In conducting this case-by-case analysis, Courts may consider certain nonexclusive factors, including "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362, 1366 (Fed. Cir. 2023) (quoting *Octane Fitness*, 572 U.S. at 554 n.6). An award of fees may be justified when a case "present[s] either subjective bad faith or exceptionally meritless claims." *Octane Fitness,* 572 U.S. at 555. But "fee awards are not to be used as a penalty for failure to win a patent infringement suit." *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (internal quotation marks omitted). The party moving for attorneys' fees is "required to establish their entitlement to fees by a preponderance of the evidence." *EagleView Techs.*, 522 F. Supp. 3d at 5 (citing *Octane Fitness*, 572 U.S. at 557-58).

### III.   DISCUSSION

#### A.   Exceptional Case[3]

Defendant argues that this is an exceptional case in which an award of attorneys' fees under § 285 is warranted. For the reasons described below, the Court disagrees.

---

[3]   The parties do not dispute that Defendant is the prevailing party based on this Court awarding summary judgment in favor of Defendant. (ECF No. 117 at 15; ECF No. 118 at 11.)

### 1. *Inventorship*

Defendant's chief argument centers on Plaintiff's conduct with respect to inventorship. Defendant argues "[a]sserting this plainly invalid patent alone is grounds for fees under § 285" because "it is a party's duty to reconsider the merits of its case throughout the litigation." (ECF No. 117 at 16-17 (citing *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379-80 (Fed. Cir. 2017); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013)).) Defendant claims that Plaintiff knew its patent was invalid "for at least *five years*." (ECF No. 117 at 17 (emphasis in original).). Plaintiff responds by noting that Defendant failed to raise the inventorship issue until August of 2024 and that its argument was not frivolous. (ECF No. 118 at 12-13.)

The Court finds that Plaintiff's conduct with respect to the inventorship issue does not suggest exceptionality. First, although this Court ruled against Plaintiff on the issue of inventorship, "a strong or even correct litigating position is not the standard by which we assess exceptionality." *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018); *see also Shire Dev. LLC v. Amneal Pharms. LLC*, Civ. No. 15-02865, 2018 WL 4938773, at *6 (D.N.J. Oct. 11, 2018) ("[P]laintiffs need not set forth a strong argument to prevail in a determination of exceptional. Their argument may be [] weak and nonetheless still not invoke exceptionality."). As discussed in the Court's summary judgment opinion, Plaintiff's position as to inventorship was unavailing. (ECF No. 113 at 8-17.) But Plaintiff's argument that the presumption of inventorship should not be disturbed when Prendergast had "the germ, the seed of the idea of the cool pet pad," tested the cooling composition, and discovered it was pressure activated, (*id.* at 14-15), was not "exceptionally meritless" or made in "subjective bad faith," *Octane Fitness,* 572 U.S. at 555.

7

Second, the caselaw cited by Defendant with respect to the duty to reconsider one's case is inapposite because each case deals with intervening events that the non-prevailing party failed to consider. In *Inventor Holdings*, the Federal Circuit affirmed an exceptional finding because the plaintiff failed to "reassess its case in view of new controlling law" from the Supreme Court which "made clear" that the product was "outside the patent system." 876 F.3d at 1379. In that case, "there [was] no uncertainty or difficulty in applying the principles set out in [the Supreme Court decision] to reach the conclusion that the . . . patent's claims [were] ineligible." *Id.* And in *Taurus*, the court affirmed exceptionality when the plaintiff continued to pursue infringement claims even after an adverse claim construction put the party on notice that its suit "lacked a reasonable basis and was, therefore, pursued and maintained in bad faith." 726 F.3d at 1328-29.

Here, by contrast, there was no intervening precedent, claim construction, or other event for Plaintiff to consider. Defendant could have alerted Plaintiff to the inventorship issue any time after Prendergast's October 2020 deposition, but it did not do so until the August 2024 summary judgment briefing. (ECF No. 100-2 at 37-39; ECF No. 100-8 at 2.) The failure of a moving party to "provide early, focused, and supported notice" of the non-moving party's allegedly "exceptional litigation behavior" supports a denial of attorneys' fees. *See Stone Basket*, 892 F.3d at 1181. So is the case here.[4]

### 2. Delaware Litigation

Defendant next argues that this case is exceptional due to Plaintiff's conduct in the Delaware Litigation, which concerned related patents. (ECF No. 117 at 9-10.) In the Delaware

---

[4] Defendant's argument that Plaintiff "admitted" it was not the legal inventor of the '218 Patent in its summary judgment briefing, (ECF No. 117 at 17), is similarly unavailing. Plaintiff admitted that it sourced the cooling material from a Chinese factory, but Plaintiff's unequivocal position in its summary judgment briefing was that Prendergast was the legal "inventor" of the patent. (*See* ECF No. 104 at 7-12.)

8

Litigation, Plaintiff failed to disclose the transcript of Prendergast's deposition to the PTO. (*Id.* at 10.) Given this (and other) conduct, Defendant sought to add inequitable conduct claims in the Delaware Litigation, and the court granted that request. (*Id.*) Defendant now attempts to use this development in the Delaware Litigation to argue that the New Jersey case is exceptional. (*Id.* at 17-18.) The Court declines to make such a finding.

Courts may consider litigation conduct in another case to determine whether the case at issue is exceptional. *See, e.g.*, *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."). Still, the key question is whether the litigation before *this Court* is exceptional. In other words, related litigation may shed light on whether this case is exceptional, but if the exceptional conduct existed solely outside of this litigation, then it cannot provide the basis for an attorneys' fee award. *Cf. Monolithic Power Sys., Inc. v. O2 Micro Int'l., Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (affirming award of attorneys' fees when the district court, after "presid[ing] over a decade of litigation between" the parties, determined that the plaintiff engaged in its typical "modus operandi" conduct "*[i]n the underlying case*" such that the court "assessed that this pattern amounted to a vexatious litigation strategy that would support a finding of exceptional case") (emphasis added). And in cases where inequitable conduct can provide a basis for exceptionality, the inequitable conduct occurred *in those cases*—not, as is the case here, solely in other litigation. *See, e.g.*, *United Cannabis Corp.* 66 F. 4th at 1366, 1368-70 (analyzing inequitable conduct claim based on plaintiff's failure to disclose information to the PTO with respect to the patent at issue).

9

Here, Defendant fails to demonstrate why the potentially inequitable conduct in the Delaware Litigation supports a finding of exceptionality in this case. Plaintiff failed to disclose Prendergast's deposition testimony to the PTO in the Delaware Litigation, but that testimony of course did not exist before the '218 Patent was filed. Should the Delaware court subsequently find Plaintiff liable for inequitable conduct, the proper forum for an attorneys' fees motion would be in that court, where that conduct occurred.[5] And to the extent Plaintiff is asking this Court to find that Plaintiff's conduct surrounding inventorship was frivolous because the Delaware court found Prendergast's deposition was material to the question of inventorship, this argument is unavailing. As discussed, this Court relied on Prendergast's deposition in its summary judgment opinion, so it does not deny its importance, but Plaintiff's conduct with respect to inventorship was not exceptionally meritless or made in bad faith. *See supra* Section III.A.1.

### 3. Pre-Suit Investigation

Defendant next argues that Plaintiff failed to "properly investigate the alleged infringement before filing suit" such that Plaintiff did not "have a good faith belief that the Accused Products" were pressure-activated—the key feature of the patent. (ECF No. 117 at 18-19.) Plaintiff contends that it properly investigated the Accused Products before filing suit. (ECF No. 118 at 20-22.)

"Inadequacy of a pre-filing preparation may be relevant to the 'exceptional' case question." *Epcon Gas Sys., Inc., v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002). Originally articulated in the Rule 11 context, "[t]he key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis." *Q-Pharma, Inc. v.*

---

[5]  Notably, the Delaware court simply granted Defendant's request to add an inequitable conduct claim. (ECF No. 116-2 at 3, 12.) Defendant does not argue that the Delaware court affirmatively found Plaintiff committed inequitable conduct, and this Court will not supplant the Delaware court's role in making that finding.

*Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004). When a party conducts an infringement analysis, such conduct suggests the subsequent suit was "neither frivolous nor unjustified" for purposes of § 285. *Id.* at 1304; *see also Cap. Bridge Co., Ltd. v. IVL Techs. Ltd*, Civ. No. 04-4002, 2007 WL 3168327, at *6 (S.D.N.Y. Oct. 26, 2007). "[A]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma*, 360 F.3d at 1302-04 (finding conduct not sanctionable under Rule 11 and not exceptional under § 285 when patentee "obtained a sample of the accused product, reviewed . . . statements made in the advertising and labeling of the accused product, and, most importantly, compared the claims of the patent with the accused product").

Here, the record weighs against a finding of exceptionality. The fact that the Accused Product was not marketed as pressure activated, (ECF No. 104-1 ¶ 5; ECF No. 117 at 19), weighs in favor of Defendant because it suggests there was no meaningful overlap between the products and thus no infringement. But other factors demonstrate that Plaintiff engaged in an adequate pre-suit investigation to uncover whether, despite the advertising, there was sufficient evidence of overlap, and thus potential infringement, to bring suit: Counsel for Plaintiff purchased and examined the Accused Product, tested whether the Accused Product was pressure-activated, and most importantly, "compared [the Accused Product] to the claims of [Plaintiff's] patent." (ECF No. 118 at 21; ECF No. 118-10 at 4-5.)

Defendant responds that Plaintiff's pre-filing investigation was inadequate because it "did not consult with scientific experts." (ECF No. 119 at 6.) Defendant appears to be suggesting that a heightened standard akin to the requirements laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), should seep into the exceptionality analysis but offers no caselaw to support such a contention. For purposes of a § 285 analysis, the key question is

11

whether Plaintiff engaged in an infringement analysis because such an inquiry suggests that the ultimate suit was made in good faith. *Q-Pharma, Inc.*, 360 F.3d at 1302-04; *see also Cap. Bridge*, 2007 WL 3168327, at *6. The record reflects that Plaintiff engaged in such an analysis, so its pre-suit conduct weighs against a finding of exceptionality.

### 4. **Plaintiff's Expert**

As for the post-filing phase, Defendant argues Plaintiff and its expert "orchestrated a phony scientific test to support its infringement allegation." (ECF No. 117 at 19.) Defendant contends that Plaintiff's ground-beef test was a "bad faith" attempt to "hid[e] behind the veneer of scientific expertise and use[] that veneer to prolong this case and attempt to extract a settlement." (*Id.* at 20.) Plaintiff responds that this Court mooted the infringement analysis by granting summary judgment and, regardless, the expert testimony was sufficient. (ECF No. 118 at 23-24.)

A district court shall "not [be] force[d] . . . on a motion for attorney fees, to conduct the trial it never had" and decide "issues mooted by summary judgment." *Spineology, Inc. v. Wright Med. Tech., Inc.*, 910 F.3d 1227, 1230 (Fed. Cir. 2018). Regardless, "exclusion of expert testimony under *Daubert* does not automatically trigger a finding of litigation misconduct, and in most cases likely would not do so" unless the circumstances are "sufficiently egregious to support an award of attorney fees." *MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907, 920 (Fed. Cir. 2012). In *MarcTec*, the expert testimony was "sufficiently egregious" because the expert introduced "an untested and untestable theory that [was] neither reliable nor relevant to the issues at hand." *Id.* at 913-14.

Here, Plaintiff's use of its expert does not support an award of attorneys' fees. This Court decided summary judgment on the narrow issue of *inventorship*. (ECF No. 113 at 4.) Defendant now invites this Court to make a finding that goes towards the issue of infringement. But that

issue is moot because the patent is invalid. *See Spineology,* 910 F.3d at 1230.[6] Therefore, Plaintiff's expert testimony does not weigh in favor of an award of attorneys' fees.

### 5. Asserting the '218 Patent in Other Cases

Finally, Defendant argues that this case is exceptional because Plaintiff "has filed up to 18 cases against at least 11 defendants asserting the '218 Patent and related patents." (ECF No. 117 at 20.) Defendant contends that Plaintiff engaged in similar misconduct in those cases as it did in this case. (*Id.*) Plaintiff counters that it did not engage in misconduct in those cases and that "those pleadings ha[ve] been successfully litigated multiple times." (ECF No. 118 at 25.)

A "pattern of action by plaintiffs of bringing suit against many defendants *without carefully reviewing their claims*," supports a determination of exceptionality. *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1364 (Fed. Cir. 2019) (internal quotation marks omitted) (emphasis in original). In *Theremolife*, the court affirmed an award of attorneys' fees when the district court, among other findings, reasoned that because it "oversaw the full group of more than six dozen suits," it was able to conclude that "the inadequacy of plaintiff's pre-filing investigation . . . extended widely beyond the two" immediate cases before the court. *Id*.

Plaintiff's conduct in other cases with respect to the '218 Patent does not support an award of attorneys' fees. As discussed above, Plaintiff's conduct in this case does not rise to the level of exceptional so Defendant's argument that Plaintiff engaged in similar conduct in other cases is unavailing. Unlike in *Thermolife*, Defendant here fails to demonstrate Plaintiff brought suit

---

[6] And even if the Court considered Defendant's expert testimony argument, it would still fail to weigh in Defendant's favor. Even if the testimony were insufficient under *Daubert*, it would still not be so "egregious" such that it would fall into the unlikely scenario of supporting an attorneys' fees finding. Unlike in *MarcTec,* Defendant does not dispute that Plaintiff's expert conducted a test that was relevant to determine whether Defendant's Accused Product was pressure activated—a core issue in the infringement claim. (ECF No. 117 at 11-12; ECF No. 118 at 23-24; ECF No. 119 at 6.)

"*without carefully reviewing [its] claims.*" *Id.* And the fact that Plaintiff has found past success in litigating these cases, (ECF No. 118 at 25), only further supports the point that its efforts here were—while ultimately unsuccessful—not frivolous.

Therefore, based on the totality of the circumstances, this case does not "stand[] out from others with respect to the substantive strength" of Plaintiff's litigating position "or the unreasonable manner in which the case was litigated," *Octane Fitness,* 572 U.S. at 554, so the Court finds it is not exceptional.[7]

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion for Attorneys' Fees under 35 U.S.C. § 285 (ECF No. 116) is **DENIED**.[8] An appropriate Order follows.

Dated: September 22, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[7] Because the Court finds that this case is not exceptional, it will not decide whether Defendant's proposed attorneys' fees are reasonable. *See Luv n' Care, Ltd. v. Laurain* (Fed. Cir. 2024) (describing § 285 as a "two-step analysis" in which "the district court must determine whether the case is exceptional; if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party") (internal quotation marks omitted).

[8] Defendant concedes that it may not obtain expert fees under § 285. (ECF No. 117 at 23.) Instead, Defendant asks this Court to award expert fees "under the inherent authority of the Court." (*Id.* (citing *PS Prods. Inc., v. Panther Trading Co. Inc.,* 122 F.4th 893, 898 (Fed. Cir. 2024)).) A "finding of bath faith is usually required before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless the conduct of a party or an attorney is egregious." *Ferguson v. Valero Energy Corp.,* 454 F. App'x 109, 112 (3d Cir. 2011) (internal quotation marks and citations omitted). Because this Court finds Plaintiff's conduct does not rise to the level of exceptional for purposes of § 285, *see supra* Section III.A, it similarly finds Plaintiff failed to engage in "bad faith" or "egregious conduct" meriting an award of expert fees.